**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ticey Lynne Holbrook, | No. CV-17-04318-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ticey Lynne Holbrook seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and Supplemental Security Income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for an award of benefits.

## I.    Background.

On December 30, 2013, Plaintiff applied for disability insurance benefits. On January 13, 2014, Plaintiff applied for Supplemental Security Income. In both applications Plaintiff alleges disability beginning March 2, 2013. On March 17, 2016, Plaintiff appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 26, 2016, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for

1   review of the hearing decision, making the ALJ's decision the Commissioner's final

2   decision.

3   **II.     Legal Standard.**

4          The district court reviews only those issues raised by the party challenging the ALJ's

5   decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set

6   aside the Commissioner's disability determination only if the determination is not

7   supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625,

8   630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance,

9   and relevant evidence that a reasonable person might accept as adequate to support a

10  conclusion considering the record as a whole. *Id.* In determining whether substantial

11  evidence supports a decision, the court must consider the record as a whole and may not

12  affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general

13  rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of

14  which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*

15  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

16         Harmless error principles apply in the Social Security Act context. *Molina v.*

17  *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

18  substantial evidence supporting the ALJ's decision and the error does not affect the

19  ultimate non-disability determination. *Id.* The claimant usually bears the burden of showing

20  that an error is harmful. *Id.* at 1111.

21         The ALJ is responsible for resolving conflicts in medical testimony, determining

22  credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

23  Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties

24  for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*

25  *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

26  **III.    The ALJ's Five-Step Evaluation Process.**

27         To determine whether a claimant is disabled for purposes of the Social Security Act,

28  the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and that she has not engaged in substantial gainful activity since March 2, 2013. At step two, the ALJ found that Plaintiff has the following severe impairments: ankylosing spondylitis, osteoarthritis, status post hip arthroscopy, and headaches. (AR 23.)[1] At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (AR 24.) At step four, the ALJ found that Plaintiff has the RFC to perform "a range of sedentary work." (AR 25.) the ALJ further found that Plaintiff can: occasionally carry 20 pounds, frequently carry 10 pounds, stand an walk up to two hours, sit for six hours, and occasionally crawl, frequently

---

[1] "AR" is used for citations to the administrative record, filed at Doc. 18.

balance, stoop, crouch, kneel, climb ramps or stairs, frequently handle and finger with her dominant hand, tolerate occasional exposure to moving mechanical part and unprotected heights. The ALJ found Plaintiff is unable to climb ladders, ropes, or scaffolds. (AR 25.) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform her past work as a receptionist. (AR 29.)

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred by rejecting the assessments by Plaintiff's treating providers and instead favored the opinions of the non-examining state agency doctors (2) the ALJ erred by rejecting Plaintiff's symptom testimony absent specific, clear, and convincing reasons supported by substantial evidence in the whole record.

### A.    Weighing of Medical Opinion Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of Allan Mallace, M.D. and Mellissa Pannell, FNP-BC. The Court will address the ALJ's treatment of the opinions below.

### 1.    Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted

opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 1.    Allan Mallace, M.D.

Dr. Mallace served as Plaintiff's treating physician between May 2014 and November 2015, and treated Plaintiff no less than nine times during that period. (AR 429, 426, 424, 422, 600, 598, 595, 592, 590.) On May 14, 2014, Plaintiff first saw Dr. Mallace, and reported a "15 month history of joint pain." (AR 429.) After a single system musculoskeletal exam (SSME), Dr. Mallace noted that the "lower extremity show[s] severe tenderness or restriction" in Plaintiff's right thigh. (AR 430.) On May 28, 2014, Dr. Mallace noted that Plaintiff's "pain is severe[,]" and that the SSME "shows some tenderness dorsum." (AR 426.) He also noted "[n]o swelling or decreased range of motion zone peripheral skelton[sic]" and "[l]ow back tenderness." (AR 426.)

In July 2014, Dr. Mallace noted Plaintiff had "chronic pains that are severe despite multiple diagnostic and therapeutic attempts." (AR 424.) He also noted her wrists were "swollen and tender." (AR 424.) Dr. Mallace stated the SSME showed "good ranges of motion [in her] wrists hands elbows and shoulder with severe tenderness [in her] right hemipelvis and right buttock area with tenderness [in her] right leg on weightbearing."

(AR 425.) He also noted Plaintiff's "[c]hronic very painful arthralgrias with added dimension and centralization of chronic pain." (AR 425.)

In August 2014, Dr. Mallace noted Plaintiff has chronic pain in "mostly [her] right hemipelvis . . . [and] significant low back and left hemipelvis and to a far lesser extent hands and feet with morning stiffness and severe gait stability." (AR 422.) At that time, Plaintiff reported her "pain is now 10/10 and she has severe difficulty with bending." (AR 422.) Additionally, Dr. Mallace stated Plaintiff had "mild limitations of manipulation and flexion of both hands."(AR 422.) Also, Dr. Mallace noted Plaintiff had been "found to have positive HLA-B27 anigen typing[,]" and that a "[s]ingle system musculoskeletal specialty exam shows severe sacroiliac tenderness and pain on positive Schober sign with gait stability and tenderness with good ranges of motion left hip and tenderness and slight limitation rotation right hip." (AR 422-23.) Furthermore, Dr. Mallace noted "[a]klosing spondylitis/sacroiliitis with some mechanical issues of the hip as well." (AR 423.)

In April 2015, D. Mallace noted Plaintiff had "positive ankylosing spondylitis in context of severe degeneration [in her right] hip and chronic pain." (AR 601.) He recorded Humira provides "some but incomplete benefit" and that Plaintiff still has "severe pains [in her] hip." (AR 601.) A physical exam showed "[t]ender restriction [in her right] hip . . . as well as tender PROM and AROM cervical spine."(AR 602.) The exam also showed"[m]ild swelling and tenderness wrists" and Plaintiff "[w]alks with antalgic gai[t]." (AR 602.)

In May 2015, Dr. Mallace noted Plaintiff has "HLA-B27 positive spondylitis in the context of severe mechanical hip problems and TMJ problems" and her "[o]verall pain is still severe." (AR 598.) Dr. Mallace did note Plaintiff has"[n]o synovitis of wrists and hands." (AR 598.) In July 2015, Dr. Mallace noted Plaintiff was having "[s]ome nocturnal headaches . . . but [n]o other new symptoms." (AR 595.) The SSME showed "asymmetric tender joints at MCP #1 and PIP #5 on the right hand" and "[c]hronic restrictions." (AR 596) His notes showed the "[a]nkylosing spondylitis [is] *somewhat better* with Enbrel." (AR 596) (emphasis added.)

In September 2015, Dr. Mallace noted Plaintiff had "[c]hronic abnormal gait and limited lumbar motion." (AR 593.) In November 2015, Dr. Mallace noted Plaintiff was "HLA B27 positive [for] ankylosing spondyilitis", she had "[o]steoarthritis of hips" and the Orthopedist "has no surgical solution at this time." (AR 590.) He also noted Plaintiff's chief complaint is "[w]orsening pains and anxiety." (AR 590.) Dr. Mallace recorded there was "[n]o joint swelling or symptoms of infection." (AR 590.) He noted Plaintiff had "[p]ainful hips from traumatic osteoarthritis." (AR 590.) The SSME showed no "signs of synovitis or enthesitis" but it did show "[g]ait debility from hip debilities from degenerative cause." (AR 590.)

Dr. Mallace's opinion is contradicted in part by the medical opinions of non-examining state agency physicians, Drs. Mikhail Bargain and Nadine Keer. (AR 61-74, 77-87.) Accordingly, the ALJ may only discount Dr. Mallace's opinion for "specific and legitimate" reasons. *See Lester*, 81 F.3d at 830-31. In her decision, the ALJ discounts Dr. Mallace's opinion, affording it "limited weight," because (1) Dr. Mallace "provided no explanation for the extremely reduced limitations he opined on a check-box form" and (2) Dr. Mallace's opinion is "at odds with his examination of the [Plaintiff] showing no signs of synovitis, abnormal gait due to hip (which improved after surgery), and limited range of motion." (AR 28-29.) As discussed below, the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Mallace.

### a. Conclusory Opinion.

The ALJ's first reason for discounting Dr. Mallace's opinion testimony is that he used check-box evaluations and "provided no explanation." (AR 23.) An "ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). While Dr. Mallace's evaluation can be classified as a check-box form, his opinions noted on the form were supported by 18 months of treatment notes. (AR 429, 426, 424, 422, 600, 598, 595, 592, 590.)

Here, the ALJ fails to recognize that the opinions expressed by Dr. Mallace in the form were based on his long-term relationship and significant experience with Plaintiff and supported by the medical record. Simply stating that a medical opinion is not supported by sufficient objective findings without explanation does not constitute a "specific and legitimate" reason for discounting a treating physician's medical opinion. "The ALJ must do more than offer her conclusions. She must set forth her own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-422. Here, the ALJ ignores the objective evidence throughout the record which corroborated Dr. Mallace's opinions and fails to provide any explanation for doing so. Thus, this is a specific but not legitimate reason for discounting Dr. Mallace's testimony.

### b. Not Supported by Examinations.

The ALJ asserts that Dr. Mallace's opinion is "at odds with his examination of the [Plaintiff] showing no signs of synovitis, abnormal gait due to hip (which improved after surgery), and limited range of motion (16F)." (AR 28-29) To properly reject a treating physician opinion, an ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

Here, the ALJ cited to Exhibit 16F, a document consisting of Dr. Mallace's treatment notes from four separate evaluations of Plaintiff. (AR 590-606.) On two occasions in those notes, Dr. Mallace notes that an examination showed no "synovitis." (AR 590 (November 24, 2015 note finding "no signs of synovitis"); AR 598 (May 15, 2015 note finding "no synovitis of wrists and hands")).) But the ALJ does not explain how Plaintiff's lack of synovitis, a specific type of inflammation that occurs in the "synoval membrane" that lines "synoval joints," is at odds with Dr. Mallace's medical opinion. But the ALJ ignores that, throughout his treatment records, Dr. Mallace notes that Plaintiff's "lower extremity show[s] severe tenderness or restriction" in her right thigh (AR 430), Plaintiff has "[c]hronic very painful arthralgrias" (AR 425), "mild limitations of manipulation and flexion of both hands"(AR 422.), Plaintiff was "found to have positive

HLA-B27 anigen typing" (AR 422), "asymmetric tender joints at MCP #1 and PIP #5 on the right hand" (AR 596), and "[c]hronic restrictions" (AR 596).

Similarly, the ALJ fails to explain how an abnormal gait and limited range of motion would contradict or undermine Dr. Mallace's opinion. Accordingly, the Court finds that the ALJ has failed to provide specific and legitimate reasons for why little weight was given to Dr. Mallace's assessment on the basis of inconsistencies with the medical record.

### 2. Mellissa Pannell, FNP-BC.

Between April 2014 and February 2016, Nurse Practitioner Pannell served as one of Plaintiff's medical care providers, and focused on treatment for Plaintiff's chronic pain. (*See* AR 363-67, 374-76, 377-81, 463-67, 468-72, 473-77, 478-82, 483-87, 488-92, 563-64.) On February 26, 2016 NP Pannell completed a Pain Functional Capacity Questionnaire assessing Plaintiff's chronic pain. (AR 563-64.)

In her decision, the ALJ affords "minimal weight" to NP Pannell's pain questionnaire because (1) "[a]s a nurse practitioner, Nurse Pannell is not an acceptable medical source"; (2) she "did not provide any explanation or rationale"; (3) the form is based on Plaintiff subjective allegations; (4) NP Pannell provided no specific work limitations; and (5) the form did not reflect improvement after surgery. On appeal, Plaintiff argues the ALJ erred by rejecting NP Pannell's opinion.

The Court need not evaluate whether NP Pannell's medical opinion was properly discounted because the Court is reversing and remanding Plaintiff's case for award of benefits based on the ALJ's error in evaluating the Dr. Mallace's medical opinion evidence and Plaintiff's symptom testimony. Accordingly, the Court will not address this additional argument.

### B. The ALJ Erred in Evaluating Plaintiff's Credibility.

### 1. Legal Standard.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of her symptoms or of a causal relationship between her impairment and the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce [her symptoms]." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. See 20 C.F.R. § 404.1529(c)(1).

### 2. Plaintiff's Symptom Testimony.

At the hearing, Plaintiff testified to the following facts. Plaintiff quit working in 2013 due to back and hip pain. (AR 42.) After surgery which "took out some of the cartilage" and physical therapy, Plaintiff was" feeling a little bit better in [her] hip area" but then "it started to feel the same as it did before." (AR 42.) Plaintiff saw her "surgeon a few more times" and he recommended "cortisone injections into the hip." (AR 42.)

Plaintiff started having hand pain about a year and a half before the hearing. (AR 43.) Plaintiff's right hand "gets crammed and swollen.' (AR 42.) Plaintiff testified she has "spondylitis in [her] thumbs and [her] pinky fingers," and Plaintiff receives injections in her hands that help "a little bit temporarily." (AR 42.) However, the injections more help "with the burning, shooting pain more than it does with the actual use or ability to use [her] hand." (AR 43.) Plaintiff has difficulty "[t]ying shoes, squeezing any type of a bottle, . . . or holding . . . anything more than just a cup." (AR 47.) Plaintiff testified that she has begun

dropping things more, and that holding things with her fingers becomes painful. (AR 43.) Plaintiff is only able to type with her non-dominant hand for "maybe five or six minutes" and then needs to take a break for "[h]alf an hour, maybe." (AR 47.)

Plaintiff has headaches "every morning with severe eye pain[,]" and she receives OMB injections to obtain relief, but the injections are not wholly successful, and "they tend to wear off pretty quickly." (AR 43.) Plaintiff has "been on a few different medications for eye pain" and "they've all had a lot of adverse side effects." (AR 43.) Plaintiff also has jaw pain and "somedays chewing is difficult." (AR 44.)

Plaintiff further testified "sitting is kind of hard for [her] after 20 or 30 minutes" and that "[w]alking is pretty painful." (AR 44.) She stated "five or six times" a day she does a few things around the house and then lays down for "thirty minutes to an hour, sometimes longer." (AR 46.) Plaintiff does not go to her son's school events because the walk from the parking lot is too far. (AR 44.) Plaintiff does drive but only short distances. (AR 46.) Plaintiff cooks dinner for her son by popping "something in the oven, if [she] can, a pizza or something" but she does not "do a lot of chopping or cutting." (AR 44.) She testified she can "do the dishes a little" as well as "wipe the counters down" and that she is able to do the laundry because the basket is "on wheels, so [she] just kind of drag[s] that around." (AR 48.)

Plaintiff testified that she has been receiving Humira injections for about a year and a half but the injections "didn't really do anything at all." (AR 45.) Plaintiff stated that the Enbrel injections have "maybe helped" and that she could do "a little bit more." (AR 45.) She testified since 2013 her "issues are worsening" and she doesn't "feel like that [she has] really got any relief from any of the medications" she takes. (AR 46.) However, she did note if she does not take Celebrex she has "a really bad day." (AR 46.)

**3.     The ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.**

In her decision, the ALJ finds that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that Plaintiff's

ankylosing spondylitis, osteoarthritis, status post hip arthroscopy, and headaches" were "sever impairments." (AR 23.) However, the ALJ ultimately concludes that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ finds Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

The ALJ provides three reasons for discounting Plaintiff's testimony: (1) Plaintiff "has engaged in somewhat normal level of daily activity" (2) Plaintiff's pain has been "effectively managed" by "conservative treatment modalities" and (3) the limitations Plaintiff testified to were "not corroborated in the record." (AR 27.) The Court will evaluate each reason provided for discounting Plaintiff's testimony below.

### a. Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony" about subjective symptoms, like pain or fatigue, "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "The mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal quotations omitted). However, if a plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a [plaintiff's] allegations." *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of his day engaged in pursuits involving the

performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick v.Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

Here, the ALJ found that Plaintiff's daily activities were inconsistent with her symptom testimony. Specifically, the ALJ states that Plaintiff's has engaged in "somewhat normal level of daily activity. (AR 27.) The ALJ noted Plaintiff helped her daughter apply for a loan and cares for her ten-year-old son. (AR 27.) The ALJ also noted the Plaintiff continued to drive short distances and left an appointment early to pick him up. (AR 27.) The record does not reflect the details of how the Plaintiff helped her daughter with the loan and whether it involved going to a bank together or simply talking through the process or documents from her home for short periods of time. Additionally, in caring for her son she states she does cook for him, which involves putting something in the oven however she noted that he can do most things by himself. (AR 44.) This does not show how she is able to do more than simple things for short periods of time. Finally, the ALJ notes Plaintiff drives short distances and picked her son up from school one time. The record does not reflect how often the claimant drives and the amount of time she spent driving to pick up her son one time. A Plaintiff does not have to be completely incapacitated to be considered disabled. *Benecke v. Barnhart*, 379 F.3d 587, 594 (2004). Additionally, the ALJ fails to show how these activities take up a substantial part of the day. *See Orn*, 495 F.3d at 639.

The Court finds that the ALJ's reasoning that Plaintiff's symptom testimony is inconsistent with daily activities is not supported by substantial evidence that "is specific, clear, and convincing." *See Vasquez v. Astrue*, 572 F.3d 586, 591. Accordingly, this reasoning by the ALJ fails to justify discrediting Plaintiff's symptom testimony.

### b. Inconsistent with the Medical Record.

The ALJ next found that Plaintiff's statements regarding "the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence for the reasons explained in this decision." (AR 29.) Earlier in her decision, the ALJ

provides the following summary of Plaintiff's medical conditions and their respective treatments:

The claimant has been diagnosed and treated for ankylosing spondylitis, which was verified by a positive HLA-B27 antigen typing (6F/10). Nevertheless, x-rays of her hands, feet and wrist were negative (6F/6-9). Further, other indicators of inflammatory arthritis were largely normal, such as C-reactive Protein and sedimentation rate (Id.). I also note that records indicate that the claimant reported that her pain improved with Enbrel (Exhibit 11F, p. 11; 16F, p. 4, 7) as well as Humira (16F/l). The sedentary residual functional capacity reached herein accommodates the signs and symptoms from this condition to the extent supported by the medical evidence. In that regard I note that on or about her alleged onset of disability, the claimant reported that she "regularly runs on the treadmill 3x/week and bikes regularly" (1F/10). Indeed at that time she sought treatment for complaints of hip pain.

The record shows ongoing care for chronic hip pain (Exhibit 2F, p. 53). A magnetic resonance imaging scan (MRI) of the right hip in April 2013 revealed mild to moderate osteoarthritis as well as a nondisplaced labral tear (Exhibit 3F, p. 13-14). Epidural cortisone injections provided significant short-term relief of hip pain (Exhibit 2F, p. 28; 3F, p. 21-23). The claimant eventually underwent a right hip arthroscopy in September 2013 (Exhibit 3F, p. 8). One month later, the claimant rated her hip pain at a three out often, where it was seven out often prior to the procedure (Exhibit 3F, p. 19). Subsequent physical therapy notes indicate that the claimant reported improving hip pain. The claimant was able to sit for longer periods. Her gait and hip range of motion also improved (Exhibit 1F, p. 2; 2F, p. 4, 6, 25-27). In fact, the claimant reported that "hip is feeling much more mobile when she's walking" (Exhibit 2F, p. 23). An MRI of the hips in January 2014 showed mild joint space narrowing, as well as mild trochanteric bursitis. The study did not show any sign of osteonecrosis (Exhibit 3F, p. 5). The claimant eventually developed increased pain in her hip (Exhibit 5F, p. 9, 13, 18; 6F, p. 13, 18; 7F, p. 17). While treatment providers noted tenderness in the right thigh, exams often revealed only slight limitation in range of motion in the right hip as well as normal muscle bulk and tone in the right quadriceps (Exhibit 5F, p. 23; 6F, p. 11). In fact, a physical exam in December 2015 noted 5/5 motor strength in right lower extremity (Exhibit l 7F, p. 8). To be sure, her hip pain improved significantly with hip surgery.

The claimant developed sciatica in December 2013 after getting into a high truck (Exhibit 3F, p. 18). A lumbar MRI in January 2014 showed only minimal facet arthrosis at L4-S, but was otherwise unremarkable (Exhibit 3F, p. 6). While physical exams revealed tenderness and reduced lumbar range of motion (Exhibit 5F, p. 23), her primary care doctor noted that the MRI did not show lumbar spine pathology or nerve impingement as a potential cause of the claimant's pain (Exhibit 7F, p. 17). Electrodiagnostic studies of the lower extremities in March 2014 were normal, with no sign of lumbar radiculopathy (Exhibit 5F, p. 30). The claimant received a series of epidural injections at L4-5, which provided significant pain relief (Exhibit 5F, p. 12, 45-46, 49). The claimant received a right peripheral nerve block S1 to S4 in July 2014 (Exhibit 5F, p. 51), and a follow up in September 2014 noted normal range of motion in lumbar spine (Exhibit 10F, p. 43)

The claimant also complained right hand pain (Exhibit 1F, p. 6). An

examination of the hands in October 2013 noted "very mild' synovitis of the MCP (metacarpophalangeal)joints of both hands with no warmth or edema, and full range of motion in the hand joints (Exhibit IF, p. 9). There was "no appreciable synovitis in hands" during a follow up several days later (Exhibit 1F, p. 5). An EMG (electromyogram) and nerve conduction study in May 2014 was normal (Exhibit 5F, p. 37). While her rheumatologist noted tenderness and swelling in the right wrist, these symptoms were often classified as "mild" (Exhibit 6F, p. 13; 16F, p. 13). Her testimony at the hearing that her right hand cramped frequently and she was unable to use it is uncorrorborated by objective evidence. While the claimant's description of joint pain and hand weakness is not totally at odds with the objective record, I conclude that these symptoms do not preclude the claimant from performing work available in the economy. I have accommodated her restrictions in the residual functional capacity above. Even accounting for these limitations, there is work that the claimant could perform.

(AR 26-27.)

At no point in her decision does the ALJ specific analysis detailing precisely how Plaintiff's symptom testimony is "not entirely consistent with the medical evidence[.]" (*See* AR 26-29.) The ALJ's recitation of Plaintiff's medical record alone, without further analysis explaining how the ALJ interprets the record to contradict Plaintiff's symptom testimony, is not sufficient. A claimant's pain testimony is necessarily subjective, and cannot be discounted simply by citing to a lack of medical evidence in the record. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting subjective pain testimony cannot be rejected only because it is not fully corroborated by objective medical evidence, that evidence is a relevant factor in determining the severity of the Plaintiff's pain).

Here, the ALJ fails to provide any evidence in the record, other than a lack of evidence, that would discredit Plaintiff's reported pain in her hand, hip, back, and from severe headaches. Accordingly, the Court finds the ALJ's second reason for discounting Plaintiff's symptom testimony is not specific, and is insufficient justification for doing so.

### c. Plaintiff has Received Successful Treatment.

The ALJ's third reason for discounting Plaintiff's symptom testimony is "records indicate that conservative treatment modalities have effectively managed [Plaintiff's] pain." (AR 27.) Specifically, the ALJ notes Plaintiff's pain improved with the Enbrel and Humira injections as well as an occipital nerve block. The ALJ also notes the Plaintiff reported relief from medication and diet modifications. (AR 27.)

Invasive injections into the lower back and hips, an occipital nerve block, and hip surgery are not conservative treatment. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (2014); *Jalexis O., Plaintiff, v. Nancy A. Berryhill, Acting Comm'r of Soc. Sec., Defendant.*, No. 6:17-CV-00172-MC, 2018 WL 4931996, at *5 (D. Or. Oct. 10, 2018); *Padilla v. Comm'r of Soc. Sec. Admin.*, No. CV-17-02737-PHX-BSB, 2018 WL 4770807, at *7 (D. Ariz. Oct. 3, 2018). Dr. Mallace noted that Enbrel was "high risk medicine" (AR 590.) The Court finds that ALJ erred when stating that injections into the hip, back, and head as well as surgery are considered conservative treatment.[2] Accordingly, the ALJ's third reason for discounting Plaintiff's symptom testimony is not legitimate.

## C. Remand.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

In this instance, all three factors are satisfied. The record has been fully developed, the Court has found that the ALJ failed to provide legally sufficient reasons for discounting both the medical opinion of Dr. Mallace and Plaintiff's symptom testimony, and if the improperly discounted evidence were credited as true, the ALJ would be required to find

---

[2] The ALJ also notes that Plaintiff reported that her pain improved with injection medication. (AR 26.) However, the ALJ ignores that even after the stated improvement Plaintiff reported her pain as rating between a seven and ten. (*See, e.g.*, AR 483 (9), 478 (10), 468 (7), 463 (7).)

Plaintiff is disabled. (*See* AR 52-53 (Transcript of Vocational Expert Testimony concluding that a person with Plaintiff's limitations as described by her testimony and Dr. Mallace's medical opinion would not be able to work).)

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 27th day of February, 2019.

Honorable John Z. Boyle
United States Magistrate Judge